IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| **RONALD JEFFERSON DAVIS, JR.,** | ) | C/A 2:13-2717-RMG-BM |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **ANDREW TAYLOR AND NAOMI** | ) | |
| **TAYLOR,** | **)** | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

This is a *pro se*[1] appeal by the Appellant Debtor ("Appellant") of an order of the United States Bankruptcy Court for the District of South Carolina denying discharge of his debt owed to Appellees Andrew and Naomi Taylor ("Appellees"). Appellant also appeals several of the Bankruptcy Court's pre-trial orders. In re: Ronald Jefferson Davis, Jr., A. No. 12-80034-dd (D.S.C.). This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), which grants District Courts jurisdiction to hear appeals from final judgments, orders, and decrees of Bankruptcy Judges. Forsythe v. Yeley 508 B.R. 82 (S.D.Ind. Mar. 20, 2014).

The record before the Court reflects that Appellant filed for bankruptcy protection

---

[1]Although Appellant Ronald Davis ("Appellant") appears *pro se* in this action, he is an attorney who has represented himself in state, bankruptcy, and federal court proceedings. See Court Docket No. 12-1, p. 2.

1



under Chapter 7 of the Bankruptcy Code on December 5, 2011.  <u>See</u> Court Docket No. 12-7.  The Appellees responded by filing an adversary proceeding on March 2, 2012 requesting that the Bankruptcy Court deny the dischargeability of Appellant's debt to them under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).  <u>See</u> Court Docket No. 3-1.  11 U.S.C. § 523(a), in the relevant sections, provides an exception to discharge . . .

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition
>> . . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

A trial was held on March 26-28, 2013.  <u>See</u> Court Docket No. 12-1, p. 1.  On July 26, 2013, the Bankruptcy Court ruled that Appellant's debt to Appellees was nondischargeable under 11 U.S.C.  §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).  <u>See</u> Court Docket No. 12-1, pp. 1-51.  The Bankruptcy Court found that Appellant had convinced Appellees to buy $950,000 in stock in a community bank in Georgia (The Georgian Bank), that the Appellees gave Appellant a total of $950,000 to be used for this purpose, but that Appellant never purchased any stock for the Appellees. The Bankruptcy Court also found that Appellant forged or caused Appellees' signatures to be forged on $5 million dollar loan guarantees.  <u>See</u> Court Order No.  12-1, pp. 6, 12-14, 21-23, 26-27, 29-32.

Appellant filed a notice of appeal challenging the Bankruptcy Court's finding that he owes a debt that is not subject to discharge [Court Docket Nos. 12-1 & 12-2].  Appellant also alleges the Bankruptcy Court erred in additional rulings and orders, including:

2



1. August 30, 2012 Order denying Appellant's Motion to Strike Amended Complaint and "False" Certificate of Service (entered August 31, 2012). [Court Docket No. 6-8].

2. September 10, 2012 Order denying Motion to Dismiss as Settled [Court Docket No. 7-1].

3. September 13, 2012 Order denying Appellant's Motion to Dismiss Amended Complaint [Court Docket No. 6-8].

4. October 10, 2012 Order denying Appellant's request for a jury trial [Court Docket No. 8-1].

5. December 12, 2012 Order denying Motion for Mediation [Court Docket No. 8-7].

6. February 1, 2013 Order denying, among other things, motion to extend discovery and amend scheduling order, motion for summary judgment related to no debt, motion for summary judgment as no damages, motion for summary judgment since not a fiduciary, motion re arbitration, motion to appoint a pro bono attorney for trial [Court Docket No. 10-4].

Appellant raises the following issues in this appeal:

**Issue One:** Complaint should have been dismissed because Appellees failed to TIMELY SERVE the amended complaint. This is a critical issue in that without a ruling in Appellant's favor, the entire purpose of Certificates of Service is eviscerated in this jurisdiction.

**Issue Two:** Complaint should have been dismissed due to the fact that Appellees' claim[ ] had been settled pursuant to the October 7, 2010 Settlement Agreement and Mutual Release. The Bankruptcy Court never addressed this critical issue, and without a ruling in Appellant's favor, entity/corporate managers will be unable to rely upon the authority granted to them in legally binding operating agreements.

**Issue Three:** Complaint should have been dismissed due to the fact that Appellees suffered no damages. Appellees $950,000 investment was rendered worthless due to no fault of Appellant.

**Issue Four:** Complaint should have been dismissed due to the fact that Appellees suffered no damages. Appellees $950,000 investment was rendered worthless due

3



to no fault of Appellant.[2]

**Issue Five:** The Bankruptcy Court erred in finding alleged debt was nondischargeable under 11 U.S.C. § 523(a)(6).

<u>See</u> Appellant Brief, 2; <u>see</u> <u>also</u> Court Docket No. 12-4, pp. 4-11.[3]

### Discussion

On appeal, the District Court reviews the Bankruptcy Court's findings of fact for clear error, and its legal conclusions <u>de</u> <u>novo</u>. <u>SG Homes Associates, LP v. Marinucci</u>, 718 F.3d 327, 334 (4th Cir. 2013); <u>Zurich American Ins. Co. v. Tessler</u>, (<u>In re J.A. Jones Inc.</u>), 492 F.3d 242, 249 (4th Cir. 2007); <u>In</u> <u>re</u>: <u>Merry-Go-Round Enterprises, Inc.</u>, 400 F.3d 219, 244 (4th Cir. 2005); <u>Forsythe</u>, 508 B.R. at 84 ["[F]indings of fact are not set aside unless clearly erroneous and 'due regard [must] be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'"](quoting Fed.R.Bankr.P. 8013). Mixed questions of facts and law are also reviewed <u>de</u> <u>novo</u>. <u>Zurich</u>, 492 F.3d at 249.

In considering this appeal pursuant to these standards, the undersigned is constrained to note that, although Appellant has the burden of presenting an adequate record for this Court to review, he has not filed a transcript in this case. This omission renders this Court's review problematic with respect to many of the issues presented in this appeal, as was noted by the Western District of Tennessee:

As appellants, debtors carry the burden of presenting the court with an adequate

---

[2]Although Grounds Three and Four contain the same claim, Appellant asserts different supporting grounds for each.

[3]Appellant also improperly attempts to raise two additional issues in his brief, which are dealt with at the end of this Report and Recommendation.

4



record. In re Sasson Jeans, Inc., 90 B.R. 608, 612 (S.D.N.Y.1988); 9 *Collier's on Bankruptcy* ¶ 8006.04 (15th ed.1995). Although debtors designated the transcript of the bankruptcy court proceeding as part of the record on appeal, it appears they never ordered a copy of the transcript, as required by Bankruptcy Rule 8006.[4] Accordingly, debtors fail to carry their burden of proving that the bankruptcy court's finding . . . was clearly erroneous. See In re Eads, 69 B.R. 730, 734 (9th Cir. BAP 1986) ("Absent a transcript, it is impossible to determine if the trial judge's conclusion ... was clearly erroneous. Therefore, we have no choice but to affirm on this point."), aff'd in part, rev'd in part on other grounds, 839 F.2d 1352 (9th Cir.1988); In re Payeur, 22 B.R. 516, 519 (1st Cir. BAP 1982) (finding that appellant did not meet burden of proving bankruptcy court's finding was clearly erroneous where record did not contain transcript of hearing); 9 *Collier's* at ¶ 8006.05 ("If the [a]ppellant wishes to urge that a finding or conclusion is unsupported by the evidence, a transcript of all evidence relevant to such findings or conclusion must be included.").

Acosta v. I.R.S., 184 B.R. 544, 546 & n. 2 (W.D.Tenn. 1995); see also In re Kritt, 190 B.R. 382 (9th Cir. 1995)[By failing to provide a complete transcript of the trial below, Appellant has effectively precluded meaningful appellate review of the bankruptcy court's findings.]

Although Appellant listed "Trial Transcript/CD" on his designation of record, he has provided no evidence that he complied with the requirements of Rule 8006 to order a copy of the transcript. See Court Docket No. 12-4, p. 4. Rather, despite Rule 8006 providing that such action should be taken "immediately" after filing the designation,[5] Appellant never references his failure to file the transcript or any attempt to comply with Rule 8006 until after Appellees had filed their brief and pointed out his failure to file the transcript. See Appellant's Reply Brief, pp. 4-5. Even

---

[4]Rule 8006 provides in pertinent part:
If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its costs.

[5]The undersigned also notes that failure to comply with the Bankruptcy rules may, in certain cases, result in a district court dismissing an appeal. In re Caberera, No. 07-430, 2007 WL 4380275 at ** 2-3 (W.D.N.C. Dec. 11, 2007).



then, Appellant references in vague, general terms his inability to pay for a transcript[6] or, at least, of a potential need to partially share the costs with the Appellees. However, there is nothing in the record that shows Appellant ever requested the Bankruptcy Court to provide a free transcript based on his financial circumstances. Appellant's untimely, vague reference to financial constraints without any supporting documentation and absent a properly supported request for a free copy of the transcript pursuant to 28 U.S.C. § 753(f), does not entitle him to have a transcript provided in this case at this late date.

Notwithstanding the above, a number of Appellant's issues involve pretrial rulings and exhibits in the record submitted, and Appellees have not contended that they are prejudiced by the Court's consideration of these records or that these records are in conflict with any evidence on these same matters which were submitted at trial. Accordingly, to the extent that the record addresses any of Appellant's claims of factual error, the Court has reviewed the relevant evidence in the record to determine whether any of the Bankruptcy Court's findings on those matters are clear error. Marinucci, 718 F.3d at 334. However, to the extent any of Appellant's claims of error relate to factual findings of the Bankruptcy Court made as a result of the trial of this case, these findings have been deemed established for purposes of this appeal to the extent a transcript would be necessary to resolve the issue. Acosta, 184 B.R. at 546 & n. 2; In re Kritt, 190 B.R. 382.

## I.

In Ground One of this appeal, Appellant contends that the case should have been dismissed because Appellees failed to timely serve an amended complaint in the Bankruptcy case.

---

[6]The Court notes that Appellant is not proceeding *in forma pauperis* in this action.

6



This matter was raised to the Bankruptcy Court and the Bankruptcy Judge made the following findings: (1) on June 4, 2012, Appellees filed an amended complaint, but failed to file a certificate of service; (2) after the Bankruptcy Court discovered the omission and contacted Appellees' counsel, a certificate of service was filed on June 14, 2012; (3) in the evening of June 14, 2012, Appellant contacted Appellees' counsel by email and informed him that he believed a false certificate of service had been filed, as he had not yet received the amended complaint by mail; (4) Appellees' counsel responded and indicated that his paralegal, Ms. Steadman, had filed and served the amended complaint on Appellant by mail on June 4, but had inadvertently failed to prepare and file a certificate of service; (5) Appellees' counsel indicated that Appellant should have already received a copy of the amended complaint via U.S. Mail, but pointed out that Appellant clearly had electronic access to the amended complaint, as evidenced by his email a mere few hours after the certificate of service was filed; (6) Appellees' counsel also attached a copy of the amended complaint to his email response to the Appellant and told Appellant that he could have additional time to respond to the amended complaint if he desired; (7) on June 20, 2012, the Court entered a consent order between the parties extending Appellant's time to answer or file other responses to the amended complaint; (8) Appellant then filed a motion to dismiss the amended complaint because he had not received the amended complaint by US mail and that the filing of the certificate of service did not satisfy the requirements of Fed.R.Civ.P. 5 and SC LBR 9013-3[7]; (9) Appellant also attached to his pleadings copies of two envelopes and cover letters from Ms. Steadman; (10) Appellant argued that the envelopes showed differing dates from the accompanying legal letters and suggested that this was

---

[7]Fed.R.Civ.P. 5 requires that a certificate of service be filed within "a reasonable time" after service. SC LBR 9013-3 requires a pleading to be "accompanied by" a certificate of service.

7



evidence of Ms. Steadman's propensity to be less than truthful about properly serving the amended complaint; (11) other than Appellant's statement to the Court, there was no evidence that the envelopes in which the documents were sent reflected a different date than the service documents; (12) Appellant attached an envelope but provided no indication of what it contained, other than his handwritten notes on the face of the envelope; (13) additionally, even assuming that the documents were contained in the envelopes as Appellant claims, they were of no help to Appellant's argument; (14) the documents both related to this case, but were immaterial to the matter before the court; (15) the issue here was whether Appellant was served with the amended complaint; there is a presumption that he was served; (16) the certificate of service filed on June 14 was valid on its face and was filed only ten days after the amended complaint; (17) Appellant has not shown that the failure to file the certificate of service contemporaneously with the amended complaint, in accordance with Appellees' counsel's stated office policy, was due to intentional or bad faith misconduct; (18) it appeared that the failure to file the certificate of service was the result of a mere mistake; (19) even the other alleged instances of differing dates on letters and their alleged accompanying envelopes did not tip the weight of the evidence and rebut the presumption of service; (20) the certificate of service was proper, and there is a presumption that Appellant was properly served with the amended complaint; (21) Appellees stated that the amended complaint was in fact mailed to Appellant on June 4 but that Ms. Steadman, through an oversight, failed to file a certificate of service; (22) Appellees' counsel attached an affidavit from Ms. Steadman to his objection, in which she attested that she mailed the amended complaint on June 4 but simply failed to file a certificate of service; (23) Appellant stated that he never received the amended complaint and that his non-receipt is evidence that the amended complaint was never mailed; (24) assuming, as the court did for purposes of this motion, that the

8



Appellant did not receive the complaint by mail, service was complete upon mailing, and non-receipt does not affect the validity of service; (25) Appellant's claims that he did not receive the amended complaint by mail did not rebut the presumption of valid service; (26) even if Appellant did not receive the amended complaint by mail, he suffered no prejudice; (27) Appellant had previously stated that he had access to documents electronically filed with this court by virtue of his use of the Pacer system; (28) further, Appellees' counsel provided Appellant with a copy of the amended complaint by email less than 24 hours after Appellant contacted him regarding the alleged failure of service; (29) Appellees' counsel also offered Appellant an extension of time to answer the amended complaint, which Appellant accepted; (30) Appellant clearly had access to and actual notice of the amended complaint and had not been prejudiced by his alleged failure to receive the amended complaint by mail; and (31) no valid reason existed to strike the amended complaint. See Court Docket No. 6-8, pp. 2-5.

Appellant argues that the ten (10) day late filed Certificate of Service is not "reasonable" under Rule 5.2 and is not compliant with SC LBR 9013-3. However, the Bankruptcy Court pointed out that a proper certificate of service raises a presumption of valid service; United States v. Wright, No. 00-4030, 2000 WL 1846340 (4th Cir. Dec. 18, 2000); and Appellant's claim that he did not receive the amended complaint by mail does not rebut the presumption of service. Timmons v. United States, 194 F.2d 357, 360 (4th Cir. 1952)[service by mail complete upon mailing]; Macon v. Dupont, No. 10-260, 2011 WL 1814925 (E.D.Va. May 11, 2011)[service by mail complete upon mailing]; In re Erickson, No. 11-06970-dd, 2012 WL 3484142 at * 3 (Bankr.D.S.C. Aug. 14, 2012). Further, Petitioner has not shown that the ten (10) day delay based upon the facts of this case made the filing unreasonable, nor has Petitioner shown prejudice from the



allegedly late filing of the certificate of service.

In sum, based upon a review of the relevant case law and applicable facts, the undersigned can find no clear error in the Bankruptcy Court's findings of fact, nor any reversible error of law. <u>Kielisch</u>, 258 F.3d at 319; <u>In</u> <u>re</u>: <u>Green</u>, 934 F.2d at 570; <u>cf</u>. <u>United States v. Shaffer Equipment Co.</u>, 11 F.3d 450, 462 (4th Cir. 1993)[A court's inherent power to dismiss or deny dismissal of a case for abuse or deception is reviewed on an abuse of discretion standard]. Accordingly, the Bankruptcy Court's Order denying Appellant's motion to dismiss the Appellees' amended complaint for allegedly failing to timely serve the amended complaint should be **affirmed,** and Appellant's appeal on that basis should be **dismissed.**

## II.

Appellant also argues that the amended complaint should have been dismissed because this claim had been settled pursuant to an October 7, 2010 Settlement Agreement and Mutual Release ("Settlement Agreement") entered into by Appellees and certain limited liability corporations. <u>See</u> Court Docket No. 6-9 [Motion to Dismiss with Settlement Agreement attached]. Appellant argues in his motion that he, as an officer of several of those entities, "is individually protected via entity and corporate shield defenses." <u>See</u> Court Docket No. 6-9, p. 2. However, Appellant admits in his motion that "he himself was not released" as part of this Settlement Agreement. <u>Id.</u> at p. 2, n. 1. Additionally, although Appellant asserts that the Bankruptcy Court never addressed this issue; <u>see</u> Court Docket No. 12-4, p. 7; the record clearly shows that on September 11, 2012, the Bankruptcy Court entered an order denying Appellant's motion to dismiss, holding that, "[b]ased on a review of the settlement agreement attached to the [Appellant's] motion,



the [Appellees] did not release [Appellant] from liability." <u>See</u> Court Docket No. 7-1, p. 2.

Appellant has presented no evidence to show that the Appellees released him from liability individually in this Settlement Agreement, or that the Bankruptcy Court erred in its ruling. Accordingly, the Bankruptcy Court's Order denying Appellant's motion to dismiss on this ground should be **affirmed,** and Appellant's appeal on that basis should be **dismissed.**

### III.

Appellant contends in Issue Three of this appeal that the Bankruptcy Court erred in failing to dismiss the amended complaint due to the fact that Appellees suffered no damages. Appellant basically argues that because the stock that he was supposed to purchase with Appellees' money eventually became worthless, that Appellees would have lost their money anyway and, therefore, they suffered no damages. In its order, the Bankruptcy Court found that:

> [Appellees] testified they would not have participated in the investment in Georgian Bank if they had known about the $5 million guarantees and had known Appellant would use their $950,000 for his businesses and personal expenses. If [Appellant] had made disclosures and been truthful to [Appellees] about these matters, [Appellees] would not have participated in the investment or transferred $950,000. Similarly, if [Appellant] had been truthful in the June 11th email, [Appellees] could have taken action to stop the transfer of funds to Apogee GBC 2008 and notified Georgian Bank that they had not signed guarantees for a $5 million loan, thus taking steps to extricate themselves from the situation before having to defend a lawsuit brought to enforce the guarantees. . . .

<u>See</u> Court Docket No. 12-1, p. 46.

Accordingly, the Bankruptcy Court found that if Appellant had been truthful, the Appellees would not have invested their funds, and that even if the Appellant had been truthful in subsequent communications, that Appellees could have taken steps to extricate themselves from the situation and would not have suffered the same amount of damages. <u>See</u> Court Docket No. 21-1, pp. 45-46.



Since the transcript has not been filed in this case and Appellant has made no showing of clear error in the factual findings of the Bankruptcy Court, the undersigned can find no clear error in the Bankruptcy Court's findings of fact, nor any reversible error of law. <u>Kielisch</u>, 258 F.3d at 319; <u>In re</u>: <u>Green</u>, 934 F.2d at 570; <u>Acosta</u>, 184 B.R. at 546. Accordingly, the Bankruptcy Court's Order denying Appellant's motion to dismiss the Appellee's amended complaint for allegedly failing to show damages should be **affirmed,** and Appellant's appeal on that basis should be **dismissed.**

**IV.**

In Issue Four of his appeal, Appellant again complains that the Bankruptcy Court erred in denying his motion to dismiss the amended complaint due to the fact that Appellees suffered no damages, but here he makes different supporting arguments for relief. Specifically, Appellant contends that the Bankruptcy Court erred: 1) in allowing a late embezzlement claim when such was never included in the original or amended complaint; 2) in finding embezzlement existed when Appellant had full authority and discretion over the funds pursuant to the entity Operating Agreement to which the Appellees' were parties; 3) in finding the Appellees had entrusted $950,000 to Appellant with the intent the funds would be used to pay down the bank loan - when such would be impossible given Appellees' claims that they never knew about the bank loan; and 4) in finding embezzlement existed when Appellant did not use the $950,000 to pay down the bank loan - when instead the $950,000 paid by Appellees to Apogee GBC 2008, LLC was only in payment for the $1,000,000 of allocable shares Appellees had received. However, the undersigned can find no reversible error in the Bankruptcy Court's rulings.

First, as previously noted, 11 U.S.C. § 523(a)(4) provides an exception to discharge

. . .



(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

While Plaintiff complains that no embezzlement claim was included in the original or amended complaint, Appellees correctly point out that the initial complaint in the Bankruptcy case set forth that "[t]he allegations of the complaint describe an indebtedness from the [Appellant] to the [Appellees] that is excepted from discharge . . . for fraud or defalcation while action in a fiduciary capacity, embezzlement, or larceny;" See Court Docket No. 3-1, p. 3; while the amended complaint, Second Cause of Action, asserted a claim for "Denial of discharge of debt arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." See Court Docket No. 5-4, p. 10. Further, in their proposed pretrial order, the Appellees listed "[w]hether [Appellant] embezzled money from the Taylors" as one of the facts that remained to be litigated. See Court Docket No. 9-4, p. 1. The Appellees also noted in their proposed pretrial order that an issue to be determined was "[w]hether [Appellant] caused losses to the [Appellees] arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to section 523 (a)(4)." See Court Docket No. 9-4, p. 2. The Bankruptcy Court found that Appellant had notice that Appellees were asserting the debt owed to them was nondischargeable based on embezzlement, and Appellant has not shown that the Bankruptcy Court erred by allowing an embezzlement claim. Therefore, this claim is without merit.

With respect to Appellant's argument that the Bankruptcy Court erred in finding embezzlement existed when Appellant had full authority and discretion over the funds at issue pursuant to an Operating Agreement for Apogee GBC 2008, LLC, to which the Appellees were parties, the Bankruptcy Court found that it need not make a finding that Appellant was acting in a

13



fiduciary capacity[8] in order to hold the debt non-dischargeable on the grounds of embezzlement.  See Gribble v. Carlton (In re Carlton), 26 B.R. 202, 205 (Bankr.M.D. Tenn. 1982).  "Embezzlement for purposes of section 523(a)(4) is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands its has lawfully come." In Re Thomas, 686 F.3d 940, 947 (8th Cir. 2012)(quoting In re Nail, 680 F.3d 1036, 1042 (8th Cir. 2012)).  "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."  In re Bucci, 493 F.3d 635, 644 (6th Cir. 2007)(quoting Brady v. McAllister (In re Brady), 101 F.3d 1165, 1173 (6th Cir. 1996)).

Here, Appellant had structured a lending transaction whereby $ 5 million would be borrowed from the Georgian Bank to purchase the stock at issue.  The borrower on the note on May 29, 2008, was 1842 Capital, LLC.[9]  The initial May 29, 2008 note was renewed on August 29, 2008. See Court Docket No. 11-2, pp. 10-36.  Appellant signed the August 29, 2008 promissory note as managing member of 1842 Capital, LLC, and also signed as a guarantee on both the initial and renewed note.  Id.  Taylor Fairman signed as a guarantee on the May 29, 2008 note and Timothy Winder signed a guarantee on the August 29, 2008 note.  Id.  There are also guarantees for both notes

---

[8]The Bankruptcy Court noted that while it found that Appellant was a fiduciary under Georgia law, a different standard applies to determining whether someone is a fiduciary for purposes of § 523(a)(4).  However, the Bankruptcy Court held that since it found embezzlement applies, that it was not necessary to reach the issue of whether Appellant was acting in a fiduciary capacity for purposes of § 523(a)(4) during the events in question.  See Court Docket No. 12-1, p. 48.

[9]Appellant started Apogee Family Office, LLC and other numerous other companies later developed as part of the Apogee group of companies which included 1842 Capital, LLC and Apogee GBC 2008.  See Court Docket No. 12-1, p. 3.  In his answer in bankruptcy court, Appellant admits that he was managing member for 1842 Capital, LLC.  Id.; see also Court Docket No. 7-8, p. 12.



with the purported signatures of Appellees for the $5 million loan. Id. Apogee GBC 2008 was the purchaser of the Georgian Bank stock and Appellant testified that it was structured to hold the Georgian Bank stock until it was sold. Id. However, the Bankruptcy Court found that the Appellant used the Appellees' funds to pay interest on the entire $5 million loan, for his businesses, and for personal expenses, and that no stock was ever purchased for the Appellees. The Bankruptcy Court also found that, in connection with its findings of nondischargeability under § 523(a)(2)(A), the circumstances under which the Appellees were induced to participate in the Georgian Bank stock purchase and transfer $950,000 to Apogee GBC 2008 indicated fraud. Much of the Bankruptcy Court's findings are based on testimony from the trial; see Court Docket No. 12-1, pp. 7-10; and since the transcript has not been filed, the undersigned can find no clear error in these findings of fact. See, discussion, supra. Appellant has also failed to point to any provision in the Operating Agreement for Apogee GBC 2008, LLC which would have allowed him to take these actions with Appellees' money. See Court Docket No. 11-7, pp. 13-35. This claim is therefore without merit.

With regard to Appellant's argument that the Bankruptcy Court erred in "finding the Appellees had entrusted $950,000 to Appellant with the intent the funds would be used to pay down the bank loan - when such would be impossible given Appellees' claims that they never knew about the bank loan", Appellant takes facts out of sequence from the timing of events, because the evidence reflects that the Appellees initially were not aware of the loan, and only later learned about it. Based upon a review of the relevant emails and other evidence in the record, Appellant has not shown that the Bankruptcy Court's finding was clear error.

Finally, Appellant argues that the Bankruptcy Court erred in finding embezzlement existed when Appellant did not use the $950,000 to pay down the bank loan, because the $950,000



paid by Appellees to Apogee GBC 2008, LLC was only in payment for the $1,000,000 of allocable shares Appellees had received.  However, Appellant has made no showing that he purchased $950,000 or $1,000,000 worth of bank shares for the Appellees, or that he had the unfettered right to use the $950,000 until the Appellees paid an additional $50,000.  The Appellant has also made no showing that the Bankruptcy Court's findings are clearly erroneous.

Based upon a *de novo* review of the applicable law in this case as it applies to the relevant facts, the undersigned also finds no error in the Bankruptcy Court's legal finding that the debt is non-dischargeable under § 523(a)(4).  This claim is without merit.

## V.

Appellant's last argument is that the Bankruptcy Court erred in finding the alleged debt was nondischargeable under 11 U.S.C. § 523(a)(6), which provides an exception to discharge for willful and malicious injury by the debtor to another entity or to the property of another entity. Appellant contends that the court erred in: 1) finding a willful act on behalf of Appellant representing to Appellees that he would use their funds to pay down their portion of the loan; 2) failing to order mediation; 3) failing to extend discovery; 4) failing to appoint a pro bono trial attorney; 5) not addressing or providing findings relating to Appellees' perjured affidavits; 6) in agreeing with Appellees when the evidence was clear that they provided perjured affidavits while there was no evidence of any instance of Appellant committing perjury or concealment; 7) not holding Appellees to the highest knowledge standard of the Securities Exchange Commission "Super Accredited Investor"; 8) not dismissing the adversary proceedings because they should have been covered by a valid and binding arbitration agreement; and 9) finding the debt was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

16



With respect to Appellant's contention that the Bankruptcy Court erred in finding a willful act on behalf of Appellant under 11 U.S.C. § 523(a)(6), "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Jendusa-Nicolai v. Larsen, 677 F.3d 320, 322 (7th Cir. 2012).

> . . . a willful and malicious injury "is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act."Jendusa–Nicolai [v. Larson], 677 F.3d [320], 324 [(7th Cir. 2012)]. The term "injury" is "understood to mean a 'violation of another's legal right, for which the law provides a remedy.' " [First Weber Group, Inc. v.] Horsfall, 738 F.3d [767], 774 [(7th Cir. 2013)](quoting In re Lymberopoulos, 453 B.R. 340, 343 (Bankr.N.D.Ill.2011)). "The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). " 'Willfulness' can be found either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." Horsfall, 738 F.3d at 774.

In re Sobczak-Slomczewski, No. 13-972, 2014 WL 3844808 (N.D.Ill. Aug, 5, 2014).

The Bankruptcy Court found that Appellant's conduct in misrepresenting to Appellees that he would use the funds they paid Apogee GBC 2008 to pay their portion of the loan utilized to purchase the Georgian Bank stock, but then using those funds to pay interest on the entire $5 million loan and for his personal expenses while Appellees remained guarantors on the loan, constituted willful and malicious injury for which the resulting debt is nondischargeable under § 523(a)(6). Appellant has made no showing that the Bankruptcy Court erred in finding that his actions as set forth herein constituted a willful act on behalf of Appellant under 11 U.S.C. § 523(a)(6).

With regard to Petitioner's claim that the Bankruptcy Court erred in failing to order mediation, the record reflects that Appellant filed a Motion for Mediation pursuant to Local Rule



9019-2 on September 10, 2012.  <u>See</u>  Court Docket No. 6-10.  On September 12, 2012, the

Bankruptcy Court denied the motion as being premature in that an answer had not even been filed

at that time.  <u>See</u>  Court Docket No. 12-6, pp. 11-12.  On November 28, 2012, Appellant filed a

second motion for mediation, and Appellees filed a memorandum in opposition on December 10,

2012.  <u>See</u> Court Docket Nos. 8-3 & 8-5.  On December 12, 2012, the Bankruptcy Court entered an

Order denying Appellant's second motion and held:

> The [Appellant] does not indicate any willingness to share the costs of conducting mediation and provides no authority in support of imposing all costs on the [Appellees].  Moreover, this is an adversary proceeding to determine the dischargeability of a debt, and mediation is often not beneficial in resolving such issues.  Therefore, the [Appellant]'s motion for mediation is denied. While the Court is not ordering mediation, the parties are encouraged to continue to work toward a resolution of this dispute.

<u>See</u>  Court Docket Nos. 8-7.

Appellant has shown no right to mediation, and there is no basis in the record to reverse the

Bankruptcy Court's ruling on this issue.

　　　　With respect to Appellant's contention that the Bankruptcy Court erred in failing to

extend the discovery deadline, based upon the timing of the Appellant's service of discovery

requests, the volume of the requests, the responses, the timing of his request for an extension, and

the relevant case law, the undersigned does not find that the Bankruptcy Court abused its discretion

in not extending the discovery deadline.  <u>See</u> Court Docket Nos. 8-2; 13-7, pp. 44-45; 10-4, p. 3; 8-8;

8-9; and 10-4, pp. 3-4.  <u>See also</u> <u>In re Piper Aircraft Corp.</u>, 362 F.3d 736, 738 (11th Cir. 2004)["As

with any other discovery order, we review 'questions concerning the scope or opportunity for

discovery for an abuse of discretion.'"](quoting <u>In re Kiwi Int'l Air Lines, Inc.</u>, 344 F.3d 311, 323

(3d Cir.2003) [Where the court agreed "with the District Court that the Bankruptcy Court did not



abuse its discretion by denying the trustee's request for additional discovery"]); Brandt v. Wand Partners, 242 F.3d 6, 18-20 (1st Cir.2001) [reviewing discovery orders by the bankruptcy court for abuse of discretion]. See also In re Kellogg, 197 F.3d 1116, 1122 (11th Cir.1999) [holding that the district court did not err by concluding that the bankruptcy court did not abuse its discretion in denying motion for continuance, motion to withdraw, and motion for reconsideration and rehearing].

Reversal of discovery rulings is proper "only on a clear showing of abuse, and 'it is unusual to find abuse of discretion in these matters." O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542 (4th Cir. 1995)(citing United Presbyterian Church in the United States v. Reagan, 738 F.2d 1375, 1382 (D.C. 1984)(quoting Swanner v. United States 406 F.2d 716, 719 (5th Cir. 1969)), rev'd on other grounds, 517 U.S. 308 (1996). The undersigned finds no abuse of discretion with regard to the Bankruptcy Court's rulings in its discovery order. In re Piper Aircraft Corp., 362 F.3d at 738; In re Kiwi Int'l Air Lines, Inc., 344 F.3d at 323; Brandt, 242 F.3d at 18-20; see also In re Kellogg, 197 F.3d at 1122. Therefore, there is no basis to reverse the Bankruptcy Court's rulings pursuant to this standard of review.

Appellant next claims that the Bankruptcy Court erred in failing to appoint him a pro bono trial attorney. However, Appellees correctly point out that there is no Sixth Amendment right to counsel in civil cases. Brown. City of North Chicago, 365 Fed.Appx. 13 at * 3 (7th Cir. Feb. 11, 2010)["There is no Sixth Amendment right to counsel in a civil case."](citing Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001)). "Neither the Bankruptcy Code, Bankruptcy Rules, or Federal Rules authorize appointed counsel for individual debtors in bankruptcy matters." Nat'l City Bank v. Flowers (In re Flowers), 83 B.R. 953, 954 (Bankr.N.D. Ohio 1988)); see also Villarreal v. Laughlin (In re Villarreal), 304 B.R. 882, 886 (B.A.P. 8th Cir. 2004)[Debtor cannot claim ineffective



assistance of counsel where he does not have a Sixth Amendment right to counsel in a bankruptcy proceeding]. Even an incarcerated debtor has no right to appointed counsel. In re Fitzgerald, 167 B.R. 689 (Bankr. N.D.Ga. 1994)(citing United States v. Kras, 4099 U.S. 434, 445 (1973)); In re Martin-Trigona, 737 F.2d 1254, 1260-1261 (2d Cir. 1984); In re Trinsey, 115 B.R. 828, 834 (Bankr.E.D.Pa. 1990)["There is no constitutional right to counsel in a bankruptcy case . . ."]; In re Cann & Saul Steel Co., 86 B.R. 413, 416 (Bankr.E.D.Pa. 1988). Accordingly, Appellant has made no showing that the Bankruptcy Court committed reversible error in not appointing him counsel.

Appellant also argues that the Bankruptcy Court erred in failing to address Appellees' allegedly perjured affidavits and in agreeing with Appellees when the evidence was clear that they had provided perjured affidavits and where there was no evidence of Appellant committing perjury or concealment. However, although Appellant obviously disagrees with the Bankruptcy Court's findings of fact, he has presented no evidence to show that any of the Bankruptcy Court's factual findings on these issues was clearly erroneous. See Court Docket No. 12-1, pp. 35-40; 43-46 & ¶¶ 28, 53, 67, 71-72, 85, 87, 98-102, 105-107, 110-114. The Bankruptcy Court noted Appellee "Naomi Taylor . . . admitted to executing the guarantees in the FDIC-R action and was allowed to withdraw her admission. [Appellant] did not question her about her request to withdraw her admission or introduce her affidavit in support of her request into evidence." See Court Docket No. 12-1, p. 27 n. 10. The record also reflects that Appellees initially made certain admissions in the FDIC-R action[10] regarding their signatures on the loan guarantees, based on their mistaken belief that although Appellant had not initially told them that they were guarantees on the $5 million loan, that

---

[10]The FDIC-R action was the state court action seeking recovery from the Appellants for their alleged personal guarantees on the $5 million loan. Court Docket No. 12-1, pp. 18-19.



they believed they may have unknowingly signed the guarantees as part of the documents Appellant had them sign. However, the Bankruptcy Court found that when the issue came up that there were two sets of guarantees (one set on the May 29, 2008 note and another set of the August 29, 2008 renewal), Appellee Andrew Taylor testified that they knew that they didn't sign another set of papers that could have included guarantees, while their lawyer was then able to obtain copies of the guarantees and verify that it was not their signatures on either set. Appellees' then requested to withdraw their admissions regarding the signatures in the FDIC-R suit and were allowed to do so. See Court Docket No. 12-1, pp. 25-28.

As these findings were based on trial testimony, no clear error is shown; see discussion, supra; nor has Appellant otherwise shown that the Bankruptcy Court's factual findings were clearly erroneous or that it erred in any legal conclusion related to these findings.

Appellant also argues that the Bankruptcy Court erred in failing to hold Appellees to the highest knowledge standard of the Securities Exchange Commission, which applies to a "Super Accredited Investor". While Appellant is apparently arguing with regard to the sophistication of the Appellees and perhaps to the type of investments that they would qualify to invest in, Appellant does not identify what standard is at issue or was erroneously applied. Appellant has also offered no argument to show how he was in any way prevented from questioning them on their experience or that even assuming that Appellees were more sophisticated investors, that such a finding would change the outcome of the findings of the Bankruptcy Court based on the facts and evidence before that court. Appellant has not submitted the transcript in this case for the Court to review, and has made no showing that he was prevented from fully questioning the Appellees about their sophistication and experience as investors. Further, the Bankruptcy Court noted that it was the

21



Appellees who had the burden of proof by a preponderance of the evidence. <u>See</u> <u>also</u> <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991)["For these reasons, we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of- the-evidence standard."]. Hence, Appellant has not shown any errors in the Bankruptcy Court's order related to this claim.

Appellant also asserts that the Bankruptcy Court erred in not dismissing the adversary proceedings because they should have been covered by a valid and binding arbitration agreement. The record reflects that in October 2008, the Appellees signed Investment Advisory Agreements ("IA Agreements") with Apogee Wealth Management, LLC [Court Docket No. 9-7, pp. 6-17], and which were between the Appellees and Apogee Wealth Management, LLC. <u>Id</u>. On January 23, 2013, Appellant filed a motion to dismiss, stay, or compel contractually required arbitration based on these agreements. <u>See</u> Court Docket No. 9-7. On February1, 2013, the Bankruptcy Court denied the motion for arbitration, ruling:

> <u>In White Mountain Mining Co.</u>, 403 F.3d 164 (4th Cir. 2005), the Fourth Circuit upheld a bankruptcy court's decision not to compel arbitration of a core proceeding and noted that arbitration is inconsistent with Congress' intent to "centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts." <u>Id</u>. at 169-170. The determination of the dischargeability of a debt under 11 U.S.C. § 523(a) is a core proceeding under 28 U.S.C. § 157 (b)(2)(I). Submitting the issue of dischargeability of [Appellant's] alleged debt to [Appellees]s to arbitration would interfere with the centralization of determinations regarding [Appellant's] assets and legal obligations in this Court as intended by Congress.

<u>See</u> Court Docket No. 10-4, pp. 8-9.

Appellant has failed to show that the Bankruptcy Court erred in its ruling. Furthermore, Appellant was not individually a party to the IA Agreement submitted to the Court, and Appellant has therefore failed to show any agreement providing for arbitration between him, individually, and the Appellees.



Accordingly, based upon the applicable facts and law in this case, Appellant has not shown that the Bankruptcy Court erred in finding that the debt was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

## VI.

Appellant also attempts to discuss two other issues in his brief, but which were not raised in his Statement of Issues as required by Fed. R. Bankr. P. 8006. However, even assuming arguendo that these two issues were properly before the Court, Appellant has not made any showing that the Bankruptcy Court erred with respect to these two issues.

First, Appellant seems to argue that the Operating Agreement for Apogee GBC 2008, LLC authorized Appellant to use the Appellee's funds "as he saw fit." See Court Docket No. 18, p. 6; see also Court Docket No. 11-7, pp. 13-35. However, Appellant has made no credible argument or showing that the Operating Agreement allowed him to use Appellees' funds for his personal gain.

Second, Appellant challenges the Bankruptcy Court's finding that he was a fiduciary.[11]  The Bankruptcy Court found that,

> [a]s an initial matter, [Appellant] was a fiduciary of [Appellees] during the events in question under Georgia law. See Ga. Code Ann. § 23-2-58 ("Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."). [Appellant] prepared a will for [Appellees] while he was at Stillpoint. The Apogee Companies had access to [Appellees]' financial accounts and could pay bills from those accounts with [Appellees]' authorization. Apogee also had access to [Appellees]' IRA accounts and

---

[11]As previously discussed, while the Bankruptcy Court did not reach the issue of whether Appellant was a fiduciary under §523(a)(4), it did find that Appellant was a fiduciary under Georgia law in its discussion of § 523(a)(2)(A).  See Court Docket No. 12-1, p. 42.



could withdraw fees for Apogee's services from those accounts with [Appellees]' authorization. [Appellees] repeatedly testified they trusted [Appellant] in making their decision to invest in the Georgian Bank, including trusting statements [Appellant] made in his May 21, 2008 email. See Pl.'s ex. 2, pp. 70-71. Perhaps most indicative of a fiduciary relationship is the fact that [Appellant] testified he appeared on [Appellees]' behalf when obtaining the loan from Georgian Bank and provided [Appellees]' financial information without [Appellees]' ever giving their express authorization to use a loan to purchase the stock. [Appellees] never met with or spoke with Georgian Bank in connection with obtaining the loan. Further evidence of a fiduciary relationship exists in [Appellant's]  September 2009 emails describing [Appellees] as "family," see Pl.'s ex. 16, 18, and in [Appellant] encouraging [Appellees] in his August through October 2009 emails to rely on him to resolve the situation with the loan. Indeed, [Appellees'] trust in [Appellant]  was so great that they did not object to him using a loan to purchase the Georgian Bank stock even though they never authorized a loan to purchase their allocable share and they believed him when he said they signed guarantees at their meeting in August 2009, only to realize later they had not signed guarantees. Consequently, the Court finds [Appellant's] relationship with [Appellees] was such that there was a duty to speak. See Restatement (Second) of Torts § 551.

See Court Docket No. 12-1, pp. 42-43.

Appellant argues that he was only a "consultant" who provided information and recommendations to the Appellees and never acted in a fiduciary role.  See Appellant Brief, p. 7. However, after a review of the applicable case law and facts in this case, the undersigned can find no clear error in the Bankruptcy Court's findings of fact, nor any reversible error of law.  Kielisch v. Educ. Credit Mgmt. Corp., 258 F.3d 315, 319 (4th Cir. 2001); In re: Green, 934 F.2d 568, 570 (4th Cir. 1991) [Findings of fact are clearly erroneous only when the reviewing court "is left with the definite and firm conviction that a mistake has been committed"].

**Conclusion**

Based on the forgoing, it is recommended that the Bankruptcy Court's Orders at issue be **affirmed**, and that this appeal be **dismissed**.



The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

August 13, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**


      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

      Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

      **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

26

